Good morning, and may it please the Court. My name is Stacey Tolchin, and I represent Petitioner Menendez-Gonzalez with my co-counsel Megan Brewer. I would like to reserve three minutes of my time for rebuttal. This is the third time that Petitioner is appearing before this Court seeking review of the Board's refusal to sustain his appeal of the denial of his motion to reopen. While Respondent repeatedly states the Court should defer to the government's interest in finality, it is in fact Petitioner who has prevailed twice before in this case because of the government's error on jurisdiction and the government's error in applying the wrong standard of adjudication in the appeal of the denial. You said prevailed twice before. What happened the last time? It appears to me that the panel said it's not clear to us if the BIA applied the proper standard, sent it back to the BIA to apply, tell us what standard was applied. And the Court went on to recite that to identify the test that was, or the proper test for sua sponte reopenings is whether they applied the exceptional circumstances test. And the BIA said we applied the exceptional circumstances test. What's left? They applied it in the first instance, Your Honor. Before this, they applied the gross miscarriage of justice standard, and that's why the particular review was granted. I mean, what our decision said is that it's not clear to us which one, so I don't think you have a decision that says they applied the other one. In any event, it goes back. They apply the one that the panel's memorandum of disposition says is the one that's applicable. So I still ask, what's left? Right, so there's two things left, Your Honor. The first is the argument that it's a departure from the past settled course of adjudication, which is essentially the Yang argument that was adopted by the Third Circuit. Well, did you make that argument before the last panel? Because they didn't say anything about that. They didn't. I mean, we also made the argument. They just said, go back and tell us which test was applied, and said which test should be applied. And the BIA said, we applied that test. I still wonder what's left. Well, sure, Your Honor, but they didn't limit the scope to the remand order. We argued the regulatory argument as well. We argued both issues, and they just didn't address them. They only addressed the standard. But, of course, that's the first step, because you can't even look at the board's decision until there is a correct standard applied. And that wasn't done, clearly, under the correct standard until the 2015 decision. Well, again, that's not what the panel said. The panel didn't say the wrong standard was applied. It said, we're not sure which standard was applied. Right, I understand. None of the other arguments you're arguing were adopted by that prior panel decision. So when you characterize that as a victory for your client, I'm not sure it's really much of a victory. Well, sure. But, Your Honor, if you look at the Lopez-Ruiz case from this Court, what it says is that everything that's raised is still prime before the Court as far as exhaustion and as far as unaddressed issues go. We continually raise these arguments. They just weren't addressed. And they, you know, understandably weren't addressed, because there was only one ruling that was necessary for the Court in the last decision, which was go back, apply a clear standard under the correct standard. That's been done. I mean, the regulatory argument hasn't been addressed at all as well. And that is still right before the Court. So I don't think the scope of the remand was limited only to that single issue. I still think that under Lopez-Ruiz, these are still right now. Well, if we assume now we know what standard was applied, what is wrong with what the BIA did? So there's two issues before the Court, Your Honor. One is this departure from a settled course of adjudication. And the other is the violation of the regulation on appeal. So for the settled course, it seems that most of the cases you're citing to establish what you're calling a pattern are cases in which the government did not oppose sua sponte reopening, either explicitly did not oppose or did not respond. But here it seems that the government did oppose. Am I right about that? There's been so many. See, originally it was on jurisdiction only before the immigration judge, and I don't believe they filed an opposition before the immigration judge. It seems that they have been opposing, though. They've been litigating against the government. Right, as we get further. But, you know, this was the first time the exceptional situation standard was clearly applied because the immigration judge addressed only jurisdiction. And so the case that we submitted on 28J just this month in January does have a case where the government opposed and they still did grant. Most of the cases you've cited are, oh, sorry, where the government did oppose. Yeah. Yeah, there are a few where the government did, but how many cases do you need to establish a pattern? Well, in Park, or sorry, in Cruz, the Third Circuit decision, they had 10 cases, and they saw a pattern there. I don't think you have 10 cases where the government opposed. Where the government, yeah, I don't believe, I mean, the reality is they don't say in a lot of the decisions, like the cases we just 28J'd. That's one of the problems with trying to rely upon unpublished decisions. Do we know how many of those cases involved somebody whose removal was based not only on a criminal conviction, but on the fact that the petitioner or the alien never had legal status in this country to begin with? I do have 10 cases. I counted those, Your Honor. There's 10 cases in which the case is reopened and then remanded to apply for relief to the immigration judge. The rest of the cases, which I believe are another 11, are motions to reopen and then termination because the person is a permanent resident after the case is reopened. How many of these cases were published by the board? Zero. That is the issue. Now, in our jurisdiction, if they're unpublished jurisdictions, we have a rule you don't refer to them. They're as if they never occurred. They settled one case, but they're not precedential. Has the board made a determination as to what it means when they unpublish? So, Your Honor, this is addressed by the Yang case. So Yang says you can look at unpublished decisions to see the settled course of adjudication. It's not precedent. But if you look and see an established practice of doing one thing, then it's not that it's precedent. Which case is this? Yang, Y-A-N-G, at the Supreme Court. And that's what's relied upon by the Third Circuit in the Park case and the Cruz decision by the Third Circuit. And this court, go ahead. Why should we treat them any differently than we treat unpublished dispositions in our court? Because we're looking now at the settled course of adjudication analysis under Yang, which says that any departure from that settled course is arbitrary. If it's an inexplicable departure, there's no reasons. Or if it's an arbitrary departure. So what Yang says is they're not binding. But once you have a settled course of adjudication, that restricts the agency's discretion. And if you're going to depart, you need to give a non-arbitrary reason for that departure. What do we do? We count the number of unpublished dispositions and the winner is the one who has the most going their way? No, I don't think so. I think we follow what happened in Park, the Third Circuit case, which is, look, this is your discretion. You decide how you want to exercise it. But tell us why this case is different than all of these other cases. And if you look in Park, what happened is the Third Circuit sent it to the board, and the board then, following the appellate regulation, sent it back to the immigration judge and said, Judge, you make a determination. Was this vacated because of a legal invalidity? And if it was, tell us why you would deny in this case and how this is different in a non-arbitrary way from the ten other unpublished decisions. Is there any lack of clarity factually here about why the conviction was vacated? Well, it's not. I mean, nobody's addressed it. The board says it wasn't an exceptional situation. And so, you know, technically that's a fact-finding issue for the immigration judge. So we don't know why they find there was no exceptional situation if it was the 15-year delay. Well, I'm asking why the state court vacated the conviction. It was vacated because there was a lack of a transcript that was generated in the criminal case. There's no dispute about that, right? It's not unclear the way it was in the Third Circuit case. Well, I don't think we know that because there's never been a ruling from the agency. I mean, the agency has to make that determination. What facts are really contested? There's been no briefing on it and no determination on it. That's not the question I asked. Are there any facts that are contested? I mean, Judge Friedland just asked why was the California conviction set aside, and the answer is no transcripts. That's the fact. Is there anything more to be determined? But we can't rely on the board's decision when it doesn't give a basis for why there's no exceptional situation. That's not the question I asked. You're arguing that it has to be sent back to the IJ because there are facts to be determined. Right. I can't figure out any facts that are in dispute. There's two issues. One is the facts. Are there facts in dispute? The facts on – I do think there's facts in dispute on the vacature. What are they? We don't know the reason why they found there was an – they may have well found it wasn't vacated on the merits. That's happened before from the board because there's no reasoning. We don't know. Is the fact you're arguing that needs to be clarified as the basis for the board's decision? That's not a fact an IJ is going to find. What fact is necessary for an IJ to find? So two things. Again, the basis for the vacature, and two, the facts relevant to an exceptional situation for reopening. But the basis for the vacature is not disputed, right? It's because there were no transcripts. That is correct. There's just no agency decision saying that. So what tells us the agency has to recite that when no one's disputing it? Well, the agency said there was no exceptional situation, so how would that square with its past policy of reopening everything else when there's a vacature based on an illegal invalidity here? And are you saying there are no other cases in which the agency has denied reopening in similar situations? There's not. We have a case following this. But otherwise, I have to – I don't want to use all my time, but there is not one case we could find where the exceptional situation burden is applied twice. It's applied here to the vacature of the conviction, and then again they say, and even if the conviction was vacated, there is not a showing of exceptional situation on the equities, right? They say you have all these positive things, but that's not an exceptional situation. And we could not find one case that did that. The exceptional situation links only to the vacature of the conviction, but not the eligibility for relief. The other cases say you're eligible, remand it back to the judge. And I'm out of time, Your Honor, if I may. Sorry. Let me ask one question. Sure. We're kind of plowing new ground here, and I try to take analogies that would be meritorious. In the ordinary situation of cases we have, the non-agency cases, it's the responsibility of the parties themselves to make sure the record is clear as to what the board has done. Why wouldn't it be the responsibility of your client, when it was before the board, to petition the board for reconsideration on the basis of X, Y, Z, so the board would first be able to solve your problem? Why haven't you waived it? Your Honor, that's addressed by the Padilla-Padilla decision, which says that reconsideration is not required. And in this case, we've been making – I understand that, but it's not required. But it isn't required of all defendants. What we say is, unless you get it before the judge, you've waived it. But it hasn't been waived because it's already been exhausted in the briefing. To the immigration judge, we uttered that there was a settled course of adjudication. Okay, now you've covered that. But you now have a decision from the board that you say now is flawed, but there was no petition at that time for the reconsider. Why shouldn't we apply the same rule we apply in an ordinary case that it's waived? Well, I think it would be contradicting Padilla-Padilla, first of all. I think that it clearly says reconsideration is not required. But we already argued it to the board. It's the same arguments. And in a reconsideration, we have to argue error of law in fact, but it's the exact same arguments. So there's nothing that could have been accomplished. And, again, this was the third time. We've been making the same arguments for years. And I'm way over, so I'll sit down. Excuse me. Thank you. Good morning, Your Honors. This is Andrew Nsinga on behalf of the Attorney General. My apologies for the snowy and economic shutdown. I will try to keep it fairly short. I would like to focus on the two main things here are futility and finality in this case. We have a 1990 conviction now for possessing a large amount of cocaine. He was ordered removed and actually removed in 1994. He waited 15 years before seeking to vacate his conviction and then moving to reopen. Two weeks ago, this court ended all legal challenges to this court's, excuse me, to the Department of Homeland Security's reinstated removal order. That reinstated removal order bars reopening. Petitioner explicitly conceded this in a prior petition for review. So futility means there is no point addressing any of the claims petitioner has even made. Petitioner has conceded to this court that a reinstated removal order would bar reopening. And two weeks ago, this court ended all legal challenges. Even if the court were to reach any of the underlying issues, the court needs to first address exhaustion. Petitioner. This is Judge Clifton. Let me ask you to go back. I confess with my cold and medication and so forth, I may have missed something. But do we have in the record anything about a reinstated order regarding this petitioner? In this record, in the 15-73869 record, there is the removal order. There are documents pertinent to it. But we're not merely talking about the record in the sense of the agency record. We're also not talking about this court's records, this court's decisions, which is fine. There is a reinstated removal order. And so we're only looking at the court's determination. Well, let me stop you. Has this court issued an order regarding this petitioner in a different case? Yes. Do we know anything? I mean, does this panel know anything about that? Yes. So in the 28-J the government filed on last week, we referenced that the court's most recent decision affirmed the district court's denial of a habeas. That habeas was filed because this court dismissed the petition for review of the reinstated removal order. The court's dismissal was 16-71515. And in that case, petitioner explicitly conceded that if there was a reinstated removal order, reopening would be barred. I have a 28-J letter submitted by you dated January 10. Correct. I confess when I looked at it, I didn't see anything about what you're talking about here. And as I look at it quickly now, I guess I still don't. Is there another letter maybe? No. It is, I believe, the penultimate paragraph in which we inform the court that a different panel had affirmed the district court's dismissal. Okay. I do see. Okay. Well, I guess I'll need to pursue that. Go ahead. And then all of our briefing does discuss the sort of reinstatement issue because this has been an underlying issue in the nine years of litigation that there has been between these parties. So what we have and we know is a reinstated removal order and petitioner's explicit concession to this court that if there is a reinstated removal order, then reopening is not possible. And could you say again where that concession is? So I'm going to have to go through the – it's in 16-71515. It's in the other case. It's in the first petition for view of the reinstated removal order, yes. So I don't see you talk about the concession in your letter, did you? No, Your Honor. But we need to look at the briefs from that other case to even learn that it exists? Correct. There is obviously – I apologize. We should perhaps have put that in there to make it that clear. Yeah, you might think so. I mean, it's not like we're reading all the other briefs and all the other cases before this court. So I'm really adrift at what you're raising now, and it seems to me this is an odd way to raise it. But go ahead. Well, I appreciate that, and I apologize for that, Your Honor. But on June 1st of 2016, petitioner filed a supplemental stay. In that case, in that supplemental stay, on page 7, petitioner explicitly states, quote, the decision contains – by that, I mean board decision – contains no mention of any order of reinstatement of removal, which otherwise would have disqualified him from moving to reopen the case. And petitioner cites 8 U.S.C. 1231A5. And that is the bar to reopening when you have a reinstated removal order. But even if we were to get to the merits of it underlined, the court preferred me to discuss exhaustion. Petitioner repeatedly states, without any support, that there repeatedly is this argument about the settled course. But petitioner didn't. Petitioner did argue that there were BIA cases in which sua sponte reopening was granted in similar circumstances and that he should get reopening under that line of cases, right? He argued that the board has reopened, correct. So the distinction you're relying on for saying that they didn't exhaust is the BIA must reopen as opposed to the BIA should reopen. Correct. And have we been that strict in our exhaustion cases? I didn't think so. Well, exhaustion requires that the agency put on notice of what it's expected to do. And here the petitioner was arguing that sua sponte reopening is what the agency is expected to do, right? It's what the board should do. Not what the board must do because it has a settled course by adopting the APA standard that petitioner asked his court to adopt. Petitioner never argued the agency must reopen because there's a settled course. And that's particularly pressing when we're talking about saying that the agency has a settled course. Who would be the best actor to say there is a settled course? Well, the agency, of course. The attorney general. By not saying to the agency, hey, you do have a settled course, we're essentially guessing by looking at unpublished decisions that we don't know whether they do or do not apply. Even if we look at Songu Park and apply the settled course exception from the APA, what we need is cases that are tailored to the situation. The Third Circuit said we need to look at cases where the board actually limited its discretion. Do you know the answer to whether the government opposed sua sponte reopening in this case? We did, Your Honor. Well, excuse me, the Department of Homeland Security did oppose the initial reopening back in 2009. And then on appeal, they also opposed the appeal that petitioner filed from the immigration judge's decision. It seems like that would be a pretty significant difference in this case compared to the cases that petitioner is relying on. But I didn't see you make that argument. Well, the difficulty is if we're looking at Songu Park, and Songu Park is not a legal error claim, it's an abuse of discretion claim, what Songu Park says is petitioner needs to identify what is the settled course that we're even talking about. So are we talking about, as petitioner suggests in the brief, cases where the conviction was the sole basis for removal? Well, except this wasn't the sole basis for removal. The problem is we don't know how to make the comparison, even if we just look at what's argued before the court, because we don't really know what position petitioner feels he is relative to all these unclear decisions. So we're not even... Let me ask you a question before you run out of time. Yes. Your opposition relies a lot on the Third Circuit case, and we have not ruled on this in a published opinion. We have to look at the Third Circuit case. We have opinions saying that we do not create conflicts unless there is no alternative, or we use other wording that's very important. But we don't want to be in conflict with the Third Circuit. If we applied the Third Circuit case, how would this case come out? Well, if we apply Songu Park, the court would have to find that there's no unpublished decisions tailored to it, to the situation. But there already is a conflict, because Ekameyan, which was issued before Songu Park, says something very important. It says even if there are exceptional circumstances, the agencies can still deny reopening. What Songu Park says is, well, there is a settled course, and that creates an exceptional circumstance. Ergo, the agency has to explain itself. What Ekameyan says, well, it doesn't matter. If there are exceptional circumstances, great. The agency can reopen. But the agency is not required to reopen even if there would be a settled course. That's the necessary ---- It doesn't say even if there's a settled course, right? It just says even if there are exceptional circumstances, because that's not something we can review? Correct. Except that's the entire basis of Songu Park, which is to say settled course equals ---- But so the question of whether a settled course is an error of ---- No. And to be clear, Songu Park doesn't say settled course is an error of law, which is why BNEA doesn't really apply. The settled course discussion is about whether there's an abuse of discretion. That is whether there's a judicially manageable standard. But ultimately there's not, even if we apply Songu Park, because we just don't have a petitioner presenting a clear this is the government policy and why it was violated in this case. So, Counsel, we've taken you over your time. Thank you very much for attending by phone, and good luck with the snow. Thank you, Your Honor. I appreciate it. And we'll give Petitioner's Counsel one minute for rebuttal. Thank you, Your Honor. Thank you, Your Honor. Thinking about your question about the opposition, there are examples, but they are smaller, where reopening was done when there was an opposition. But I think if you apply the Park analysis, that would require that the agency then look to say if that was the reason, right? We don't know what the reason was for denying reopening in regards to the opposition. And so under the Chenery Doctrine, of course, the court can't defer. But we're not allowed to assess the exceptional circumstances. So the only thing we can figure out is whether there's a legal error. And your argument is there's a legal error because they violated a line of cases that are totally analogous to my case. But if there are big differences in that line of cases from our case, then I don't see how you can say it's totally analogous. But I think the court then would be creating a reason that's not stated by the agency. And I think applying Park, remand, would be appropriate. The Board may say we denied because it was opposed. But we've said a chameleon that in that case we said we don't know why the Board made the decision it did. All we know is that it made the decision. That didn't give us reason or a basis to send it back to ask the Board to explain. But, sure, here we have stated reasonings, right? None of them are because the government filed an opposition. And, of course, Bonilla reduces that chameleon to only the purely discretionary issues. And Park lays out the same rationale from Bonilla, that the logical extension of Bonilla is to follow Park. Well, Bonilla said if we can look at the record and find that it was premised on a legal error, that gives us jurisdiction that otherwise we wouldn't have. And you haven't pointed at something that would constitute legal error, as best I can tell. We have a departure from at least 21 cases. The Court is saying, well we only have a departure from 21 cases if the 21 cases are analogous to this one. And it's not clear that they are. Well, but, I mean, if the Court went to every single case, the facts would be different, too. I think the proper course is to say, Board, you say, is the reason why you denied this? But you said the Board doesn't have to say. But this is a settled course in that the Board says vacature of a conviction equals exceptional situation for suicide. No. Where has the Board said that as a policy or as a principle or as a precedential decision? All you can point to is a collection of cases where you infer that result without knowing the background facts. Right, but that is stated explicitly in the unpublished decisions, and that is a pattern of adjudication under Yang. But you're extrapolating that pattern by assuming you know what the relevant considerations were. Is there anywhere where the Board said the thing that you just attributed to them, which is that whenever a conviction is vacated, it's an exceptional circumstance? In the 28J that we just submitted in January, there is exactly that statement, which is the vacature of a conviction is an exceptional situation. And which case is that in? I apologize, Your Honor. Let me give you the site because there's two cases. It's either Estevan Ortiz or Cohen. Those are the two talked about in your January 4 letter. Do you mind if I just submit it by 28J? Otherwise, I don't want to take your time up. But it is in the recent January 4 submission. There's a number of cases in there. Most of them just say exceptional situation reopening, but one actually explicitly says the vacature of a conviction is an exceptional situation. Okay, well, we have taken you over your time. Thank you. Okay, so Menendez-Gonzalez v. Whitaker is submitted. And our next case on calendar is Meza-Deveni v. Whitaker, which is two case numbers, 15-73285 and 15-73870.
judges: Wallace, Clifton, Friedland